IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RYAN ANDREWS, SCOTT CRAWFORD, )
and MARK PERRY, )
 )
        Plaintiffs, )
 )       1:13cv408
   v. )
 )
CHRISTOPHER ADAM DAUGHTRY, )
 )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

One of the more popular and prolific songwriters of the twentieth century, Sammy Cahn, once wrote that love was "lovelier the second time around." BING CROSBY, *The Second Time Around*, lyrics by Sammy Cahn, music by Jimmy Van Heusen, *in* HIGH TIME (Bing Crosby Prod. 1960). This case puts the lyric to the test in the context of a contemporary songwriter's second attempt at federal removal jurisdiction.

Plaintiffs Ryan Andrews, Scott Crawford, and Mark Perry (collectively, "Plaintiffs") are suing their former bandmate, Defendant Christopher Adam Daughtry ("Daughtry"), to recover profits derived from certain musical works. The action originated in state court, was timely removed to this court, and then remanded for lack of subject matter jurisdiction. (Doc. 24

in case 1:12cv441.)[1] After some discovery and motion practice in state court, Daughtry filed an answer that asserted counterclaims under the Copyright Act, 17 U.S.C. § 101 et seq. ("Copyright Act"). He removed the action a second time to this court, premising jurisdiction on 28 U.S.C. § 1454 and the presence of a federal question in the counterclaims. (Doc. 1.)

Plaintiffs move to remand the action on the grounds that jurisdiction is lacking under section 1454 and Daughtry's removal was nevertheless untimely. (Doc. 19.) Daughtry opposes the motion on both grounds (Doc. 23) and moves to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12). The court has stayed all briefing on the dismissal motion pending resolution of Plaintiffs' motion to remand. (Doc. 22.)

For the reasons set forth below, Plaintiffs' motion to remand will be granted, rendering the court without jurisdiction to consider Daughtry's motion to dismiss.

I. BACKGROUND

A. Factual Background

The facts leading to this dispute are set forth in detail

---

[1] All references are to documents filed in the current case, 1:13cv408, unless specifically noted otherwise, as here.

2

in this court's earlier opinion. Andrews v. Daughtry, No. 1:12-cv-00411, 2013 WL 664564, at *1-3 (M.D.N.C. Feb. 22, 2013). Pertinent here, Plaintiffs allege the following:

Sometime in 2004, Andrews, Crawford, Perry, and Daughtry formed a band called "Absent Element." All four bandmates were musicians and began collaborating on songwriting, recording, and performing. Together they also marketed the band and sold band-related merchandise. All four shared equally in the band's costs and profits and considered themselves a partnership.

In late December 2004, the bandmates had a disagreement over how to split the songwriting authorship and credit for Absent Element's songs. Before the release of their album "Uprooted" in March 2005, however, they resolved their differences by "agree[ing] to equally share in the profits from any songs written by any of the partners as members of and in furtherance of Absent Element, irrespective of the extent of any one band member's contribution to a particular song." (Doc. 2 ¶ 20.) Furthermore, they "agreed that each song written by any of the partners as members of and in furtherance of Absent Element would be owned equally by the four parties, irrespective of the extent of any one band member's contribution to a particular song." (Id. ¶ 22.) This agreement was reduced to writing. Shortly after Absent Element released its first album, "Uprooted," in March 2005, the band registered a copyright for

all seven songs on it with the U.S. Copyright Office; all four bandmates were listed as co-authors.

In the summer of 2005, the bandmates agreed that Daughtry should audition for and participate in the nationally-televised singing competition "American Idol" in order to gain the band exposure. Daughtry successfully entered the competition in the fall of 2005, appeared on the show in the winter and spring of 2006, and made it to the final four before being cut in May 2006. During Daughtry's time on the show, he repeatedly introduced Plaintiffs as his bandmates to other contestants, judges, and producers; the Plaintiffs were shown on camera during one show and were identified as "Chris' Band." Plaintiffs believed that Daughtry appeared on the show in order to promote Absent Element.

Meanwhile, members of the band continued to write songs. In the summer of 2005, the song "Sinking" was written. Sometime before June 2006, the song "Home" was written. In Plaintiffs' view, regardless of who wrote the songs, they were written in furtherance of the Absent Element partnership and were therefore partnership assets. Plaintiffs believed they would share authorship credit for and profits from those songs.

Absent Element last performed in June 2006. Daughtry entered into a solo recording contract in the summer of 2006, although Plaintiffs were unaware of it and Daughtry assured

4

Plaintiffs they would continue to perform as a band. In November 2006, Daughtry released a solo debut album titled "Daughtry," recorded with studio musicians instead of Plaintiffs. Daughtry released his second album, "Leave This Town," in July 2009. In their complaint, Plaintiffs allege that music and lyrics from four Absent Element songs were used in songs on "Daughtry" and "Leave This Town": "Breakdown" and "Conviction" from the band's "Uprooted" album; "Sinking"; and "Home." Plaintiffs contend that Daughtry has failed to provide authorship credit and profits from these songs in violation of their partnership agreement.

B.  **Procedural Background**

Plaintiffs filed their complaint in Guilford County (North Carolina) Superior Court on April 5, 2012. The complaint seeks relief on five claims: four arising from the alleged partnership and one for unjust enrichment "to the extent the wrongful conduct of Daughtry . . . does not fall within the subject matter of his partnership agreement." (Doc. 2 ¶ 80.)

Daughtry removed the case to this court on May 3, 2012, premising jurisdiction on the presence of a federal question under the Copyright Act, and shortly thereafter moved to dismiss the complaint. Plaintiffs timely moved to remand the action. After hearing argument on the remand motion, this court determined that Plaintiffs had "carefully pleaded their claims

5

to avoid federal question jurisdiction" and remanded the action to the state court of origin on February 22, 2013. Andrews, 2013 WL 664564, at *6, *15.

According to Plaintiffs, after this court's remand decision "[p]roceedings then began in earnest in state court." (Doc. 20 at 3.) On March 25, 2013, Daughtry moved the North Carolina Business Court to designate the action as a complex business case. (Doc. 1-2 at 42-47.) The court denied the motion as untimely, and the case was returned to the Guilford County Superior Court on April 1. (Doc. 1-3 at 9-10.) On April 4, Daughtry filed a motion to dismiss the complaint and served his first request for production of documents on Plaintiffs. (Id. at 1-5.) According to Plaintiffs, they served their first set of written discovery on Daughtry on May 9. (Doc. 20 at 3.) An administrative hearing to appoint a mediator, determine a scheduling order, and set a trial date was set for May 29. (Doc. 1-3 at 11.)

On May 17, while his motion to dismiss was apparently pending, Daughtry filed an answer in state court, asserting two counterclaims, and, on May 20, filed a second notice of removal to this court. (Id. at 13-37; Doc. 1.) This time, Daughtry premises federal question jurisdiction on 28 U.S.C. § 1454. He counterclaims under the Copyright Act for (1) a declaratory judgment stating, among other things, that while Plaintiffs are

6

equal co-owners of the copyrights in the sound recordings of Absent Element, they do not enjoy authorship or ownership rights in the music and lyrics of all the songs alleged; rather, Daughtry holds sole ownership and authorship rights in the four Absent Element songs at issue ("Home," "Breakdown," "Conviction," and "Sinking") and co-ownership in others, and (2) an equitable accounting for profits from the "Uprooted" album. (Doc. 1-3 at 31-34.)

Plaintiffs now move again to remand the case to state court on the grounds that federal question jurisdiction is lacking and that Daughtry's removal is untimely. (Doc. 19.)

**II. ANALYSIS**

**A. Federal Jurisdiction Based on Counterclaims**

Traditionally, a plaintiff could not get into federal court simply because an anticipated *defense* to the plaintiff's state law claim would raise a federal question. See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908). Generally, federal question jurisdiction is present "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law.]" Id. at 152. In Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., the Supreme Court expressly applied this rule to counterclaims, holding that "a counterclaim – which appears as part of the defendant's answer, not as part of the plaintiff's complaint – cannot serve as the

basis for 'arising under' jurisdiction."  535 U.S. 826, 831 (2002).

Holmes Group involved not just any counterclaim, however. The defendant had asserted a counterclaim arising under federal patent law.  After Holmes Group, Congress became concerned about the decision's effects on the uniformity of federal patent law, as well as other areas traditionally reserved for exclusive federal jurisdiction, such as copyright.  The rule articulated in Holmes Group meant that state courts could end up adjudicating a significant amount of federal patent claims.  In response, Congress passed the so-called "Holmes Group fix," included in the 2011 Leahy-Smith America Invents Act.  Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 FED. CIR. B.J. 539, 539 (2012) (citing H.R. REP. NO. 112-98, at 81 (2011)).  Among other things, the "fix" added a new removal statute, which allows "*any party* [who] asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights" to remove that case to federal court.  28 U.S.C. § 1454(a) (emphasis added).  No longer is a defendant with a patent or copyright counterclaim bound by a plaintiff's well-pleaded state law complaint to litigate in a state court.

The new section 1454 does not fix open the federal courthouse doors for all defendants with a copyright

counterclaim, however. A defendant must be timely. Section 1454 specifically incorporates the procedures and deadlines applicable to other removals. See 28 U.S.C. §§ 1446, 1454(b). Under section 1446(b)(1), a notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." If the case stated in the initial pleading is not removable, however, section 1446(b)(3) requires that a notice of removal be filed "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Thus, even under section 1454, a defendant who does not remove timely will be subject to a remand motion pursuant to section 1446. However, where removal is premised solely on section 1454, the deadlines in section 1446(b) "may be extended at any time for cause shown." 28 U.S.C. § 1454(b)(2).

It is a "near-canonical rule" that the burden of proving federal removal jurisdiction lies with the party seeking removal; this rule applies even to new statutes silent on the issue. Strawn v. AT&T Mobility LLC, 530 F.3d 293, 297 (4th Cir. 2008) (refusing to disturb this "long-settled principle" as applied to the Class Action Fairness Act, despite legislative

history suggesting Congress favored federal jurisdiction over class actions). As the party seeking removal, Daughtry must therefore bear the burden of demonstrating the basis of this court's removal jurisdiction. Additionally, because Plaintiffs have challenged the timeliness of Daughtry's removal, Daughtry must demonstrate that his notice of removal was timely. See McPhatter v. Sweitzer, 401 F. Supp. 2d 468, 472 (M.D.N.C. 2005) (burden on defendant to prove timeliness of removal); Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 259 (4th Cir. 2013) (burden of proving jurisdiction and "propriety" of removal is on removing party); Kluksdahl v. Muro Pharm., Inc., 886 F. Supp. 535, 537 (E.D. Va. 1995) ("[Removing party] bears the burden of establishing the right to removal, including compliance with the requirements of 28 U.S.C. § 1446(b).").[2]

While Daughtry contends that his counterclaims arise under the Copyright Act and therefore confer federal removal jurisdiction under section 1454, the court will need to reach that issue only if Daughtry's removal is timely. Thus, because timeliness is a significant issue nevertheless, the court's inquiry will begin there.

---

[2] This procedural requirement is subject to waiver. See Barbour v. Int'l Union, 640 F.3d 599, 614-15 (4th Cir. 2011) (en banc) (timeliness of removal is a procedural requirement, which may be waived if the party opposing removal does not challenge it), abrogated on other grounds by 28 U.S.C. § 1446(b)(2)(B).

10

**B. Timeliness of Daughtry's Removal**

Daughtry contends that the 30-day clock set out in section 1446 started on May 17, 2013, the day he filed his answer and counterclaims, making his removal, filed on May 20, 2013, timely. (Doc. 23 at 9.) He reasons that the first "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" was his answer and counterclaims. 28 U.S.C. § 1446(b)(3). Plaintiffs contend that Daughtry's answer and counterclaims cannot be the clock-triggering document contemplated by section 1446(b)(3) because that section refers to a defendant's *receipt* of an "amended pleading, motion, order or other paper." (Doc. 20 at 9-11.) According to Plaintiffs, Daughtry's "Answer and Counterclaims is not a pleading or paper that [Daughtry] received – [Daughtry] prepared and filed it himself, and he could have done so at any time after receiving Plaintiff's Complaint in April 2012." (Id. at 10.) Plaintiffs conclude that the 30-day clock started on April 5, 2012, the day they filed their complaint. By Plaintiffs' measure, then, Daughtry's second notice of removal, filed on May 20, 2013, is more than a year late. (Id.)

To be sure, this court's determination that the complaint did not provide "arising under" jurisdiction for a traditional removal, Andrews, 2013 WL 664564, at *8, did not resolve the

11

question now presented. But the court need not determine whether Plaintiffs' complaint triggered the 30-day clock in section 1446(b)(1) or, in contrast, whether that trigger was as late as Daughtry's answer and counterclaims. This is because there is a date between the two that clearly provided removal notice under section 1454.

In determining when a defendant knew that a case was one which had become removable, the Fourth Circuit does "not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when." Lovern v. Gen. Motors Corp., 121 F.3d 160, 162 (4th Cir. 1997). Instead, courts may "rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." Id.

The documents exchanged in this case and the statements of Daughtry's counsel at oral argument on Plaintiffs' first motion to remand demonstrate that Daughtry knew, before the court's February 22, 2013 Memorandum Opinion and Order, that he claimed ownership of the contested Absent Element songs and sound recordings under the Copyright Act. In his memorandum in support of his motion to dismiss filed May 10, 2012, Daughtry

stated that he "(and others) owns the sound recordings and he was entitled to exploit them after [Absent Element's] dissolution." (Doc. 11 in case 1:12cv441 at 3.)[3] In his response to Plaintiffs' first motion to remand, Daughtry argued on June 25, 2012, that it was "clear that there is a dispute over both the ownership of the rights and the authorship of the 'Absent Element Songs.'" (Doc. 18 in case 1:12cv441 at 8.) And at oral argument on January 17, 2013, Daughtry's counsel informed the court that "[Daughtry's] position is that the underlying songs are owned either entirely or – entirely by Mr. Daughtry or in most part." (Doc. 23 in case 1:12cv441 at 25.) Although Daughtry characterized the claim as a defense, the substance is the same as that which forms the basis of his counterclaims. Daughtry's representations to the court thus provide objective evidence that he knew at the time that he had an ownership claim in the songs and recordings.

On February 22, 2013, Daughtry received the court's Memorandum Opinion and Order. The decision expressly acknowledged that Plaintiffs' claims presented a federal question under the Copyright Act, but it concluded that remand

---

[3] Daughtry also argued that he is "at minimum, a joint owner of the underlying works," id. at 9, that he "registered the works in his own name," id. at 19, and that by January 2, 2007, "Plaintiffs knew or reasonably should have known that Mr. Daughtry had asserted rights both in the underlying musical compositions and in the allegedly derivative works he recorded," id.

13

was required because Plaintiffs had pleaded alternative state-law theories of recovery that could provide an independent basis for recovery. Andrews, 2013 WL 664564, at *8. This decision constituted a writing within the meaning of section 1446(b)(3) and is one from which Daughtry could ascertain that, because the case was not removable on the basis of Plaintiffs' complaint, it might be removable on the basis of an ownership claim alleged exclusively under the Copyright Act, should he wish to pursue it. Indeed, the court expressly distinguished the cases relied on by Daughtry in which federal question jurisdiction was found based on a declaratory judgment claim – like Daughtry's current claim – that is limited exclusively to the Copyright Act. Id. at *7 (citing Gaiman v. McFarlane, 360 F.3d 644, 652-53 (7th Cir. 2004)). Even Daughtry concedes that the court's decision provided him notice under section 1454. (Doc. 23 at 16.) Consequently, the 30-day clock began running at least by February 22, 2013,[4] and expired thirty days later -- well before Daughtry filed his second notice of removal on May 20.

C. **Extension of Time**

Although Daughtry's current notice of removal is untimely, section 1454 allows a court to extend the deadline for "cause

---

[4] Section 1454, which became effective as to any action commenced on or after September 16, 2011, was thus effective on the date Plaintiffs filed this action on April 5, 2012.

14

shown." 28 U.S.C. § 1454(b)(2). Only a handful of cases has interpreted the statutory language of section 1454, so it is instructive to consider how those courts interpreted this provision, even though their holdings are not binding.

A Louisiana district court concluded that "[w]hile there is no authority on what constitutes 'cause shown' under 28 U.S.C. § 1454(b)(2) to extend the 30-day time period to remove, at a minimum the standard imposes some burden on the removing party to justify why its tardiness should be excused." SnoWizard, Inc. v. Andrews, Civ. A. No. 12-2796, 2013 WL 3728410, at *6 (E.D. La. July 12, 2013). A Kentucky district court agreed, noting that, although section 1454 "does not appear to create an incredibly high bar for an extension," the removing party does have "some burden" to show why its delay should be excused. Univ. of Ky. Research Found., Inc. v. Niadyne, Inc., Civ. No. 13-16-GFVT, 2013 WL 5943921, at *10 (E.D. Ky. Nov. 5, 2013) (citing SnoWizard, 2013 WL 3728410, at *6)). The court found that "oversight, inadvertence, or excusable neglect" were insufficient to excuse the defendant's late removal. Id. A different Louisiana district court found that a plaintiff's voluntary dismissal of later-served defendants (without which the remaining defendants' removal would have been considered timely) was insufficient reason to extend the time limitations.

15

Benesmart, Inc. v. Total Fin. Grp., LLC, Civ. A. No. 12-2645, 2012 WL 6020340, at *5 (E.D. La. Dec. 3, 2012).

Other procedural rules governing time limitations under a "cause shown" standard also provide some guidance. Federal Rule of Civil Procedure 6(b) sets out the standard for extending deadlines in civil litigation. Before the Rules were revised in 2007, Rule 6(b) allowed a court to extend a deadline for "cause shown"; now, Rule 6(b) allows a court to extend a deadline for "good cause." The change was "intended to be stylistic only," and did not affect the substance of the rule. 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1165 n.9 (3d ed. 2002) (citing Advisory Committee's Note to the 2007 Amendment to Rule 6). In the Rule 6(b) context, then, "cause shown" and "good cause" are not substantively different.

Like "cause shown," the Rule 6 "good cause" standard is not a high bar, but it does require some reasonable explanation for the party's delay. See, e.g., Stanley v. Huntington Nat. Bank, 492 F. App'x 456 (4th Cir. 2012) (finding no "good cause" under Rule 6 when grounds for *pro se* plaintiff's proposed amended complaint had been apparent in the pleadings for several months); U.S. Home Corp. v. Settlers Crossing, LLC, Civ. A. No. DKC 08-1863, 2012 WL 3536691, at *17 (D. Md. Aug. 14, 2012) (finding no "good cause" under Rule 6 when party had several previous opportunities to argue a particular theory, but did

16

not); Bonds v. Electrolux Home Prod., Inc., C/A No. 8:06-1650-GRA-BHH, 2006 WL 3955825, at *3-4 (D.S.C. Dec. 6, 2006) (finding "good cause" under Rule 6 when counsel's child fell seriously ill and party bore no fault for the delay); Strickland v. Alewine, C/A No. 4:08-cv-02332-GRA, 2010 WL 679607, at *1 (D.S.C. Feb. 24, 2010) (finding "good cause" under Rule 6 when *pro se* plaintiff spent time in mental hospital).

With this guidance in mind, it is apparent that Daughtry has not shown good cause under section 1454 for his nearly three-month delay in petitioning for removal following this court's February 22, 2013 Memorandum Opinion and Order. But mere delay is not the only problem. During the intervening time, Daughtry actively engaged the state court in the litigation process. In addition to serving written discovery requests on Plaintiffs, Daughtry unsuccessfully petitioned the state court to transfer the case to the North Carolina Business Court and designate it a complex business case. Further, he filed a motion to dismiss. Daughtry therefore not only participated in, but also sought remedies from, the state court for almost three months, all with full knowledge that he claimed ownership of the contested songs and recordings. Only some six weeks after the state court denied his request for designation to the Business Court did he then elect to remove the case to federal court.

One of the salutary purposes of the timing provisions of sections 1446 and 1454 is to "limit the ability of the Defendant to test the waters in one forum and, finding them inhospitable, move to another forum that might be more sympathetic to its views." Niadyne, 2013 WL 5943921, at *10. Notions of comity and federalism undergird proper respect for the timing rules of sections 1446 and 1454. Id. Late removal also "transgresses the important notions of conservation of resources and judicial economy." Id. As another court rightly observed, "these policy concerns do not vanish simply because a patent claim is implicated." Id. at *11. The same can be said for a copyright claim.

Daughtry urges the court to find cause for removal on the ground that the federal courts are the exclusive forum for his copyright claims. (Doc. 23 at 16.) But, as noted by the Niadyne court, if Congress shared that view, "it would have simply removed all time limitations" in section 1454. 2013 WL 5943921, at *10. It did not.

Therefore, Plaintiffs' motion will be granted and the case remanded to the Guilford County Superior Court. In light of this conclusion, the court lacks jurisdiction to consider Daughtry's motion to dismiss (Doc. 12), which will be denied without prejudice. See In re Bear River Drainage Dist., 267 F.2d 849, 851 (10th Cir. 1959) (citing Marchant v. Mead–Morrison

18

Mfg. Co., 11 F.2d 368, 369 (2d Cir. 1926)); McWilliams v. Monarch Rubber Co., 70 F. Supp. 2d 663, 666 (S.D. W. Va. 1999).

**III. CONCLUSION**

For the reasons set forth above, the court finds that, even assuming Daughtry's counterclaims arise under the Copyright Act and therefore provide a basis for federal removal jurisdiction, his notice of removal was untimely and without a showing of cause to excuse the delay.

IT IS THEREFORE ORDERED that Plaintiffs' motion to remand (Doc. 19) is GRANTED and the case is REMANDED to the General Court of Justice, Superior Court Division, Guilford County, North Carolina. Daughtry's motion to dismiss (Doc. 12) is DENIED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

/s/   Thomas D. Schroeder
United States District Judge

January 15, 2014